## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

BETTY M. VAIL,                                 §
                                               §
      Plaintiff,                             §
                                               §
v.                                             §        CIVIL ACTION NO. 4:08-CV-3087
                                               §
MICHAEL J. ASTRUE,                             §
Commissioner of Social Security,               §
                                               §
      Defendant.                             §

## MEMORANDUM AND ORDER

In this case brought seeking judicial review of denial of Social Security benefits, Plaintiff Betty M. Vail has filed a Motion for Summary Judgment [Doc. # 12] ("Motion"). Defendant Michael J. Astrue, Commissioner of Social Security, has responded, requesting that Plaintiff's complaint be dismissed, and Plaintiff has replied.[1] Defendant's Response is deemed a motion for summary judgment, to which Plaintiff has responded in her Reply. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the

---

[1] Defendant's Response to Plaintiff's Motion for Summary Judgment [Doc. # 15] ("Response"); Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment [Doc. # 16] ("Reply"). Defendant's Response, while not styled a motion for summary judgment, requests affirmance of the Commissioner's decision and dismissal of Plaintiff's complaint. Response, at 13.

Motion should be **denied** and dismissal of Plaintiff's claims should be **granted** for Defendant.

## I.    BACKGROUND

### A.    Procedural Background

On September 12, 2005, Vail filed an application for disability insurance benefits with the Social Security Administration ("SSA"), alleging disability beginning on August 24, 2002, as a result of acute intermittent porphyria.[2]  After being denied benefits initially and on reconsideration, Vail timely requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision.

ALJ Richard L Abrams held a hearing on October 30, 2007, in Houston, Texas. The ALJ heard testimony from vocational expert ("VE") Herman Litt, medical expert ("ME") Glenn F. Sternes, Ph.D., and ME John C. Anigbogu, M.D.[3]  In a decision dated November 30, 2007, the ALJ denied Vail's application for benefits.[4]  On

---

[2]     R. 57-68.  Porphyria is "[a] disorder in the metabolism of porphyria . . ., marked by an increase in the formation of porphyrins and their presence in the blood and the urine."  4 J.E. SCHMIDT, M.D., ATTORNEY'S DICTIONARY OF MEDICINE AND WORD FINDER P-357 (2008). "Acute intermittent porphyria" is "marked by abdominal pain, psychic disturbances, and paralysis." 1 *id*. at A-119.

[3]     R. 744-819.

[4]     R 11-26.

January 29, 2008, Vail requested review of the ALJ's decision by the Social Security Administration's Office of Hearing and Appeals.[5]  On August 29, 2008, the Appeals Council denied Vail's request to review the ALJ's decision, rendering the ALJ's determination final.[6]  Vail filed this case on October 17, 2008, seeking judicial review of the Commissioner's denial of her claim for benefits.[7]

###    B.    Factual Background

The relevant period for evaluation of Plaintiff's disability is from August 24, 2002, the alleged onset of her disability, through December 31, 2003, which is her date last insured ("DLI").[8]

Vail served the U.S. Navy from 1980 through 1995, working as a medical service technician.  She worked part-time jobs from 1995 to 2000.  Beginning on February 27, 2001, Vail participated in the Vocational Rehabilitation and Employment Program at the Houston Veterans Administration ("VA").  While doing so, she attended Houston Baptist University.

As stated above, Vail argues that her disability began in August 2002.  Medical

---

[5]    R. 9.

[6]    R. 4.

[7]    Complaint [Doc. # 1].

[8]    R. 14.  The ALJ held that Vail's earnings records showed that she had acquired sufficient quarters of coverage to remain insured through December 31, 2003 only.  *Id.*  Plaintiff has not challenged the DLI.

records in evidence confirm that she was doing well prior to that date.[9]  In August 2002, while traveling in the northwest, Vail suffered bouts of nausea, vomiting, and diarrhea for several days, and then had one or more seizures.  She was admitted to St. Anthony Hospital in Pendleton, Oregon, through the emergency room.[10]   The emergency personnel who brought her to the hospital noted combative behavior and tonic clonic (generalized) seizures.[11]  Her discharge summary on August 28, 2002, reflects a primary diagnosis of "seizures, new onset, generalized" and a secondary diagnosis of hypokalemia.[12]  Upon discharge, she was instructed to continue certain medications and to follow up with her neurologist in Houston.[13]  She was further instructed not to drive and to obtain a brain image.[14]

On September 18, 2002, back at the VA Clinic in Houston, Vail reported her

---

[9]     On October 4, 2001, Vail was seen at the VA Clinic in Houston for an annual exam. R. 153.  Records from the exam report that Vail was stable from past medical conditions and screened negative for depression.  R. 156-57.  In 2002, Vail was seen at the VA clinic for a pap smear,  a check-up by a dermatologist, lab work, and other routine matters.  R. 158-68.  She was reported in February 2002 to be "doing well." R. 166.

[10]    R. 109.

[11]    R. 114-15, 119-22.

[12]    R. 110.  Hypokalemia is defined as "[a] diminished amount of potassium in the blood."  3 SCHMIDT at H-269.

[13]    R. 111.

[14]    R. 112.

seizures and memory disorder in Oregon.[15]  She reported that she was not currently using seizure medication, had not had recent seizures, and that her memory had recovered.[16]  She screened negative for depression.[17]  However, in the same month, her rehabilitation services at the VA were interrupted.  Kevin Reed, Vail's vocational rehabilitation counselor at the VA, stated in 2007 that rehabilitation services to Vail "were interrupted due to her health on September 23, 2002."[18]  The letter does not provide the duration of the interruption or the exact cause.

Over the next few months, an EEG showed normal results[19] and an MRI of the brain was "essentially normal."[20]  At a follow up at the VA on October 11, 2002, Vail reported no complaints.[21]  She was assessed as alert, oriented, coherent, and cooperative.[22]  On October 31, 2002, Vail reported headaches.[23]  On December 4,

---

[15]     R. 167-72.

[16]     R. 169, 172.

[17]     R. 168.

[18]     R. 103 (letter from Reed dated Sept. 11, 2007).

[19]     R. 173-74 (EEG on Oct. 2, 2002).

[20]     R. 222-23 (MRI on Nov. 29, 2002).

[21]     R. 174.

[22]     R. 176.

[23]     R. 180.

2002, she reported "feeling great."[24]

On March 5, 2003, at the Houston VA Clinic, Vail reported increased depression and irritability, "exacerbated by recent loss of her dog," and no recent seizure activity.[25]  Doctor's notes from the following day record that Vail received medication for the increased depression,[26] and that the "mood disorder" was likely unrelated to her neurologic issues.[27]  Six weeks later, Vail continued to report irritability and situational depression, with multiple stressors including caring for her ill father, having her ill ex-husband living with her, and being unable to finish her degree.[28]  She also reported that she felt calmer and rested better with the medication.[29]  Her dosage was increased.[30]  Several months later, in July 2003, Vail had "no complaints" and reported that the increased medication had "worked wonderfully," with drastically improved mood and better sleep; the stressors in her life also had

---

[24]     R. 186.

[25]     R. 190.

[26]     R. 198.

[27]     R. 195.

[28]     R. 198.

[29]     *Id.*

[30]     R. 201.

decreased somewhat.[31]

In October 2005, after Vail applied for disability benefits, the SSA performed a Case Assessment.  The assessment concluded that the medical evidence of record was insufficient to establish disability prior to the DLI of December 31, 2003.[32]

On August 21, 2007, a Residual Functional Capacity form was completed by Dr. Sheila Loboprahbu, whom Plaintiff identifies as her treating physician.[33]  Dr. Loboprahbu diagnosed Plaintiff's condition as follows: "major depressive disorder single episode, seizure disorder, porphyria, cyclical vomiting, migraines."[34] She noted Vail's frequent pain which interfered with her concentration and ability to work and noted various limitations.  However, the form's questions asked about the patient's current condition, not her condition before her DLI.  Dr. Loboprahbu specifically stated that Vail was "[d]isabled *at this time*" due to visual limitations, headaches, fatigue, and vomiting "interrupting her work day and resulting in frequent absences and missed days of work," and resulting in an inability to maintain steady

---

[31]    R. 204.

[32]    R. 236-250.  A second Case Assessment in February 2006 also concluded "[t]here is no evid[ence] to support her alleged limits in the file prior to the DLI."  R. 251.

[33]    R.  729-34.

[34]    R. 730.

employment.[35]

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[36]   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[37]   "An issue is material if its resolution could affect the outcome of the action.   A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[38]

---

[35]   R. 734 (emphasis added).   Plaintiff has submitted hundreds of pages of medical records dated 2005, 2006, or 2007.  R. 253-728.  During this period she had various medical problems and at least two hospitalizations.  However, these records have limited, if any, relevance to her condition as of December 31, 2003.

[36]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[37]   FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[38]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and
(continued...)

## III.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole, and second, whether the Commissioner applied the proper legal standards to evaluate the evidence.[39]  "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[40]  It is more than a mere scintilla and less than a preponderance.[41]

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.[42]  In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work

---

[38]   (...continued)
quotation marks omitted).

[39]   *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

[40]   *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[41]   *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[42]   *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

history.[43]  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[44]  Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.[45]   The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.[46]  In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.[47]

## IV.   <u>ANALYSIS</u>

A claimant seeking benefits must prove that he or she suffers a "disability," defined by the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[48]  An ALJ must engage in a five-step sequential inquiry to determine whether the claimant is capable

---

[43]     *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.3d 123, 126 (5th Cir. 1991)).

[44]     *Perez*, 415 F.3d at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

[45]     *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[46]     *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[47]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

[48]     42 U.S.C. § 423(d)(1)(A); *see Newton*, 209 F.3d at 452.

of performing "substantial gainful activity," or is, in fact, disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.[49]   The claimant has the burden to prove disability under the first four steps.[50] If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[51] Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.[52]   A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[53]

---

[49]     *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.  The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[50]     *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

[51]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

[52]     *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[53]     *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

In this case, the ALJ determined that Vail last met the insured status requirements on December 31, 2003, her "date last insured," or DLI. He therefore considered whether she was disabled under the Social Security Act from August 24, 2002, the date Vail states she could no longer work, through December 31, 2003. When applying the five-step evaluative process, the ALJ determined that Vail had not engaged in substantial gainful activity ("SGA") during the relevant period (step one), and that she had the severe impairments of depression and a seizure disorder through the date last insured (step two).[54] At step three, the ALJ determined that Vail's impairments did not meet or medically equal one of the listed impairments, because porphyria is not a listed impairment and Vail's depression was not sufficiently severe.[55] At step four, the ALJ determined that, through her date last insured, Vail had the residual functional capacity ("RFC") to perform her past relevant work.[56] Based on the foregoing, the ALJ concluded that Vail was not disabled, as defined by the Social Security Act, during the relevant period.

Plaintiff now raises six grounds for reversal of the Commissioner's denial of benefits: (1) the ALJ who heard Plaintiff's case is "biased against all plaintiffs and all

---

[54]    R. 16.

[55]    R. 21.

[56]    R. 22-26.

claims for disability," and has been suspended from hearing cases pending a disciplinary hearing; (2) the ALJ erred in failing to properly develop the case as to Vail's mental impairments by ordering a psychiatric consultative examination; (3) the ALJ erred in failing to give controlling weight to the opinion of Vail's treating physician; (4) the ALJ failed to acknowledge certain evidence favorable to Vail; (5) the ALJ erred in finding that certain of Vail's impairments were not "severe"; (6) the ALJ provided no specific findings or analysis regarding the physical and mental demands of Vail's past relevant work.

### A.    ALJ Bias Against All Plaintiffs

Vail argues that Abrams has "exhibited an unmistakable bias against the payment of any benefits to any plaintiff" by "ignoring evidence favorable to the plaintiffs," showing "utter disregard for the facts," "taking material completely out of context," and "systematically select[ing] just those elements of the medical record that appear to support his already-formulated negative decision."[57]   Vail further complains that, although her attorney has a 70% success rate in Social Security cases in Houston, the attorney's success rate before ALJ Abrams is 0%.    Vail also states that ten Houston attorneys have brought an official complaint against ALJ Abrams asserting

---

[57]    Motion, at 5.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (due process requires that a claim be heard by a fair and impartial factfinder in administrative proceedings).

generalized bias, and that Abrams has been suspended from hearing cases pending disciplinary review.[58]

Vail's argument relies only on claims of "generalized bias," and fails to direct the Court's attention to any specific incident or consequence of bias in this case. This Court will not reverse the ALJ's decision in this case based on allegations of generalized bias against all claimants. The Court's inquiry is limited, and must be focused on the administrative record *in this case*.[59] Vail's briefing cites no evidence of the ALJ's bias or improper decisionmaking in her case. Moreover, to the extent Vail relies for her showing of bias on the evidence cited in support of her other five grounds for reversal, this argument is unavailing. As discussed in detail below, each of these five grounds lacks merit, and the ALJ's decision is supported by substantial evidence. There is no basis in the record for Vail's claim of bias against her.[60]

### B.      Failure to Order Psychiatric Consultative Examination

Vail argues that because the ME at the hearing noted her history of depression, as well as anxiety and insomnia, the ALJ erred in failing to order a psychiatric

---

[58]      Reply, at 1-2.

[59]      *See Audler*, 501 F.3d at 447 (judicial review of the denial of benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole, and second, whether the Commissioner applied the proper legal standards to evaluate the evidence).

[60]      *See Cornett v. Astrue*, 261 F. App'x 644, 650 (5th Cir. 2008).

consultative examination.

The ALJ has a duty to fully and fairly develop the record.[61]   Regulations provide that the ALJ may order a consultative examination when warranted, and the Fifth Circuit has held that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."[62]   However, the ALJ's decision cannot be reversed for failure to fully and fairly develop the record unless the claimant demonstrates that she was prejudiced by the ALJ's failure.[63]   "To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'"[64]

Vail's history of depression, anxiety, and insomnia all were discussed at the administrative hearing.   Contrary to Vail's argument, the ALJ did not make a "negative finding by inference from a lack of evidence,"[65] but rather considered all of

---

[61]   *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000); *Newton*, 209 F.3d at 458; *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).

[62]   *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (5th Cir. 1984) (citing 20 C.F.R. § 404.1517; *Ford v. Sec'y of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir.1981) (Unit B)).

[63]   *Carey*, 230 F.3d at 142.

[64]   *Id.* (quoting *Kane*, 731 F.2d at 1220).

[65]   Motion, at 7.

the conditions and concluded, based on the evidence of record, that the conditions were not sufficiently severe and had been relieved before Vail's DLI of December 31, 2003.  In particular, the ALJ concluded that her depression was a single episode in 2002 and was insufficiently severe.[66]  He also found that her anxiety, depression, and insomnia were relieved by medication in 2003, before her DLI.[67]  These findings are supported by substantial evidence in the record.

Vail has not shown that a psychiatric consultative examination was necessary to an informed decision as to her disability before the DLI.  Furthermore, given that the ALJ thoroughly considered Vail's medical records for the relevant period, Vail does not explain how a consultative examination ordered by the ALJ in 2007 could have shed additional light on her RFC before her DLI of December 31, 2003.  Because Vail has failed to demonstrate that the consultative examination would have adduced evidence that would have altered the ALJ's decision, she has failed to establish

---

[66]   R. 20-21 (ALJ considers opinion of ME Sternes regarding Vail's depression, noting that she had one episode before her DLI, in August 2002, and that it was controlled by medication); R. 21 (ALJ concludes that Vail's depression, during the period before her DLI, did not meet the requirements for a listed impairment because its effects were not of "listing level severity").

[67]   R. 17-18 (ALJ notes that in July 2003 Vail reported no complaints and stated that the medication worked beautifully); R. 204 (medical records dated July 17, 2003, state that Vail had "no complaints," and reported that medication had relieved her insomnia, depression and anxiety).

prejudice.[68]

## C.    Failure to Give Controlling Weight to Plaintiff's Treating Physician

Vail argues that the ALJ failed to conduct the required analysis under 20 C.F.R. § 404.1527(d)(2) before rejecting the views of Dr. Loboprahbu, Vail's treating physician at the VA Medical Center from 2005 onward.[69]  In particular, Vail alleges that the ALJ had in the record Dr. Loboprahbu's findings regarding Vail's RFC but did not defer to the findings or obtain a more detailed report.  Vail further states that

---

[68]     *See Carey*, 230 F.3d at 142.

[69]     20 C.F.R. § 404.1527(d)(2) provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

The factors referenced in the text above include length of the treatment relationship and frequency of examination; nature and extent of treatment relationship; supportability; consistency; and specialization.  20 C.F.R. § 404.1527(d)(2)(i) & (ii); 20 C.F.R. § 404.1527(d)(3)-(d)(6).

Dr. Loboprahbu's findings, "if given deference, would result either in plaintiff meeting or equaling one of the Commissioner's Listings or in plaintiff's actual RFC being significantly less than the full range of sedentary."[70]  Vail, of course, bears the burden to establish a disabling condition on or before her DLI.[71]

As stated above, Dr. Loboprahbu assessed Vail's RFC in August 2007, nearly four years after her DLI.   She did not treat Vail in the relevant period, 2002-03, but first treated her on August 25, 2005.[72]  Her assessments of Vail's RFC were based upon Vail's condition in 2007.  Her conclusion states that Vail was "[d]isabled *at this time*," *i.e.*, in 2007, due to visual limitations, headaches, fatigue, and vomiting "interrupting her work day and resulting in frequent absences and missed days of work," and resulting in an inability to maintain steady employment.[73]  Her assessment never squarely addresses Vail's condition before the DLI.[74]  The ALJ thus concluded that the doctor's assessment, "if it is intended to show the plaintiff's medical condition

---

[70]     Motion, at 7.

[71]     *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) (claimant bears the burden to establish a disabling condition before expiration of insured status).

[72]     R. 730.

[73]     R. 734 (emphasis added).

[74]     Toward the end of the assessment, in response to a question regarding the "earliest date" for the claimant's symptoms and limitations, Dr. Loboprahbu, "2002." R. 734.  The assessment provides no further information about Vail's 2002 condition, and makes no attempt to distinguish Vail's symptoms in 2007 from her early symptoms.

and residual functional capacity **before her date last insured**, not supported by the contemporaneously made medical evidence, and not at all supported by medical evidence made before or relating to the plaintiff's date last insured."[75]

The Fifth Circuit has held that, although the opinion of a treating physician "should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.'"[76] Moreover, a treating physician's opinion "may be assigned little or no weight when good cause is shown."[77] Good cause for discounting the opinion may be found when the treating physician's opinion is unsupported by the evidence.[78]

In this case, the ALJ carefully considered, and thoroughly discussed, the statement from Dr. Loboprahbu.[79] The ALJ specifically noted that the doctor was not Vail's treating physician for the relevant period, because she first saw Vail in August

---

[75]    R. 23.  Vail emphasizes the major depressive disorder noted by Dr. Loboprahbu, noting that its severity was sufficient to prevent her from maintaining employment. However, Dr. Loboprahbu clearly identifies Vail's major depression as a single episode.  R. 730.  This episode, in 2002, was thoroughly considered by the ALJ.

[76]    *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).

[77]    *Id*. at 455-56.

[78]    *Id*. at 456.

[79]    R. 22-23.

2005.[80]  The ALJ further noted that the doctor's opinion was not supported by the medical evidence from the relevant period, which showed symptoms in 2002 which were relieved before her DLI.[81]  These findings constitute good cause to disregard Dr. Loboprahbu's opinion, to the extent that opinion was offered to establish Vail's disability before her DLI.[82]

The Court further notes that, despite faulting the ALJ for not seeking clarification of Dr. Loboprahbu's opinion, Vail has not presented any clarification or further opinions of Dr. Loboprahbu or others that support her claim for benefits.  Vail therefore has failed to establish prejudice from the ALJ's decision not to seek additional information.[83]

---

[80]    Contrary to Plaintiff's argument, the ALJ considered the factors listed in 20 C.F.R. § 404.1527(d)(2), noting specifically that the physician first treated Vail in August 2005, that the medical evidence did not show that the physician had treated Vail as often as her report indicated, and that her conclusions were not supported by the medical evidence for the relevant time period.  R. 22-23.

[81]    R. 23.

[82]    *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) (ALJ had good cause to disregard treating physician's opinion because his assessment was unsupported by the record; all other physicians' opinions and medical tests indicated that claimant had no physiological basis for her complaint); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (substantial evidence supported the ALJ's decision to disregard the opinions of the treating physician because the physician's diagnosis was based on dubious medical techniques and the underlying evidence was contradicted by both itself and outside medical evidence).

[83]    *See Newton*, 209 F.3d at 458 ("Reversal . . . is appropriate only if the applicant shows prejudice from the ALJ's failure to request additional information").

**D.**    **Failure to Acknowledge Certain Evidence Favorable to Vail**

Vail asserts that the ALJ erred because he had records from the VA that were favorable to Vail but failed to acknowledge them.[84]  Vail points in particular to two items.

First, Vail directs the Court's attention to a 2007 letter from Kevin Reed, a Vocational Rehabilitation Counselor for the VA, which states that Vail's participation in the Vocational Rehabilitation and Employment Program was interrupted "due to her health" on September 23, 2002,[85] shortly after her hospitalization for seizures. Vail argues that this document supports her argument that she was disabled during the relevant period.  However, Vail's health problems in 2002, during and after her hospitalization in Oregon, were thoroughly addressed by the ALJ, who concluded that her condition had been relieved during 2003, before her DLI.[86]  Substantial evidence supports the ALJ's decision on this point.[87]

Second, Vail cites to a Neurology Compensation and Pension Examination

---

[84]    Motion, at 9-10 (citing *Kelly v. Chater*, 952 F. Supp 419, 426 (W.D. Tex. 1996) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) ("when the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints of pain")).

[85]    R. 103.

[86]    R. 25.

[87]    *See Audler*, 501 F.3d at 447.

completed at the VA Medical Center on January 20, 2006.   In this examination, the

doctor notes in the narrative as follows:

> [Vail] since 2000 has been experiencing intermittent headaches . . . She
> states that the headaches were still localized to the right frontal temporal
> region with sharp occasional throbbing in character and generally 7-9/10
> in intensity.     They are associated with nausea, photophobia,
> phonophobia, and occasional tinnitus.  The headache frequency varies
> from 0-4 headaches a month.  She states that the headaches last on an
> average of 48-36 hours.  She states that the headaches are completely
> functionally disabling.

> According to the veteran exposure to bright lights, loud noises, or strong
> perfumes/fragrances incite or worse[n] headache.  According to the
> veteran the headaches are improved significantly with ibuprofen 800 mg.
> The veteran has not tried any other headache medications for headache
> relief.

R. 658.  This narrative explicitly and repeatedly notes that the history is being taken

from the patient, and therefore does not constitute a diagnosis or medical conclusion.

Moreover, the narrative does not indicate any corroboration from medical records.  As

stated previously, the ALJ thoroughly considered and discussed the medical records

from the relevant period, which do not indicate significant headaches or other

complaints.  Moreover, according to the narrative above, the patient herself reported

that the headaches were "improved significantly" with ibuprofen.

The ALJ's opinion thoroughly discusses the medical evidence from the relevant

period.   The doctor's narrative cited above contradicts medical records from the

relevant period and, to the extent there was a conflict in the evidence, the ALJ

properly resolved it.[88]   Because substantial evidence—in particular, the medical

records and the testimony of two medical experts—supports the ALJ's decision, and

because there is little if any contrary evidence for the relevant time period, the

decision is conclusive and must be affirmed.[89]

### E.   Erroneous Finding that Certain Impairments Were Not "Severe"

Vail argues that the ALJ erred when finding that the following conditions were

not severe: porphyria, post-traumatic migraine headaches, degenerative joint disease,

right shoulder tendonitis, insomnia, hypertensive vascular disease, nausea, high blood

pressure, tachycardia, low back pain and cortical blindness.   Vail argues that the

combined effect of these ailments clearly impacted her ability to work, and that the

"severity" step of the sequential evaluation imposes only a mild burden of proof on

the claimant.[90]   Vail is not specific, however, about the dates of these impairments and

makes no argument specific to the relevant period in 2002-03.[91]   As stated above, the

---

[88]    *See Perez*, 415 F.3d at 461.

[89]    *See id.*

[90]    Motion, at 11 (citing, *inter alia*, *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (an impairment may be found not to be severe only if it is a "slight abnormality" with "minimal effect" on the individual and no interference with the person's ability to work); *id*. at 393 (combined effect of impairments must be considered); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (only the most trivial impairments can be rejected)).

[91]    *Id*.

ALJ carefully considered the medical records from the relevant period, and substantial evidence supported his conclusion that Vail was not disabled during that period.

Moreover, Vail's argument regarding the severity of certain additional impairments is irrelevant because the ALJ's determination was not based on a conclusion that her impairment was not severe (step two), but rather on his conclusion that she had the RFC to perform her past relevant work (step four).[92]  The ALJ in fact determined at step two that Vail did have severe impairments,[93] and proceeded to step three.  Additional grounds to support a finding of severity would not entitle her to a finding of disability.  "[H]aving a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the regulations."[94]   In order to be found disabled, Vail of course is required to satisfy the requirements of step four. The ALJ held that Vail did not do so and, as held above, Vail has not provided sufficient grounds for reversal of the ALJ's decision.

### F.   Failure to Provide Specific Findings or Analysis Regarding the Physical and Mental Demands of Plaintiff's Past Relevant Work

---

[92]   R. 22-26.

[93]   R. 16 ("Through the date last insured, the claimant had the following severe impairments: a seizure disorder and depression").

[94]   *Shipley v. Sec. of Health and Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987).  *See Ledezma v. Apfel*, 161 F.3d 8 (5th Cir. 1998); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987).

Vail argues that the ALJ erred because he failed to make findings of fact as to the physical and mental demands of her past relevant work, and thus "failed to fulfill the duty imposed by SSR 82-62."[95]  SSR 82-62 is a Program Policy Statement issued by the Social Security Administration to clarify the provisions regarding past relevant work.[96]  The Policy Statement requires adequate documentation of the ALJ's decision regarding the claimant's past relevant work, as well as a decision with clear, specific findings of fact as to (1) the claimant's RFC; (2) the physical and mental demands of the past work; and (3) whether the claimant's RFC permits a return to the past work.[97]  Plaintiff argues that, in this case, the ALJ "omitted inquiry into, and a finding of fact as to, the physical and mental demands of plaintiff's past relevant work,"[98] *i.e.*, the second factor.

The ALJ's decision covers all three factors set forth in SSR 82-62.  First, the ALJ in his ruling expressly holds that, during the relevant period, Vail could perform the exertional demands of light work, noting that she must avoid hazards such as

---

[95]     Motion, at 12.

[96]     SSR 82-62 (1982).

[97]     *Id*.

[98]     Motion, at 12-13.

heights, vibration, and dangerous machinery (including driving motor vehicles).[99]

Second, as to the demands of her past relevant work as a medical service technician, the ALJ relied on the VE's testimony in finding that Vail's past work was "light work and skilled," and included in the decision a detailed list of Vail's job duties in her past work.[100]  Finally, as to whether the claimant's RFC permitted a return to past work, the ALJ credited the VE's expert opinion that, as of her DLI, Vail could have performed her past relevant work as she had performed it and as it was generally performed.[101]  This finding was strongly supported by the ALJ's conclusion that, as of the DLI, the medical records showed ***no*** limitations on her daily life.[102]  Vail has pointed to no limitation during the relevant period, nor limitation on  any duties from her past relevant work, that could or should have led to a different finding.

---

[99]     R. 22.

[100]    R. 25-26.  The decision also states, "As noted by the claimant, military medical training is not always directly transferable to civilian settings, as the training and certifications required are often very different—but, as [the VE] noted, the skills themselves are often transferable, and the training and certification differences can be small or are often remediable."  R. 26.

[101]    R. 26.  The ALJ further held that, in the civilian context, Vail was capable of performing jobs that were available in significant numbers, such as medical records clerk, first aide attendant, and medical companion.  R. 26.

[102]    R. 25.  The ALJ further stated that he considered Vail credible as to her reports of symptoms after her DLI, but those reports, along with the medical statement by Dr. Loboprahbu, related entirely to the period after her DLI and therefore could not establish disability during the relevant period.  *Id.*

Because the ALJ's decision is supported by substantial evidence,[103] it must be affirmed.[104]

## V.   <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 12] is **DENIED**.  Judgment is **granted** for Defendant.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **11<u>th</u>** day of **December, 2009**.

Nancy F. Atlas
United States District Judge

---

[103]   *Audler*, 501 F.3d at 447 ("substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion).

[104]   *Perez*, 415 F.3d at 461.